**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ELAINE LINDBERG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 12-1090-JWL |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security income (SSI) benefits under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's failure either to include residual functional capacity (RFC) limitations related to Plaintiff's severe headaches or to explain why that severe impairment does not impose additional limitations, the court ORDERS that the decision below shall be REVERSED and that

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.     Background**

Plaintiff applied for SSI on November 4, 2009, alleging disability beginning December 31, 2002.[2]  (R. 11, 142-46, 154-58).  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 11, 73-74, 95-7).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Janice E. Barnes-Williams on April 5, 2011.  (R. 11, 28-29).  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  (R. 11, 30-73).  On June 6, 2011 ALJ Barnes-Williams issued her decision finding that Plaintiff has impairments which are severe within the meaning of the Act, and that although she has no past relevant work, there are a significant number of jobs in the national economy that she can perform.  (R. 11-21).  Therefore, the ALJ found that Plaintiff is not disabled within the meaning of the Act, and denied her application for benefits.  (R. 20-21).  Plaintiff requested Appeals Council review of the ALJ's decision and provided a Representative Brief to the Council.  (R. 7, 320-21).  The Council made the Representative Brief a part of the administrative record and considered it, but decided

---

[2]The record also contains an application by Plaintiff for Disability Insurance Benefits (SSD) under Title II of the Act, dated November 24, 2009.  (R. 147-53). However, because the ALJ's decision by its terms applies only to an application for SSI benefits, and because Plaintiff's Brief alleges only an application for SSI benefits (Pl. Br. 1) and does not argue error in failing to discuss or to consider the application for SSD benefits, the court does not consider SSD benefits in this case.

2

that the Brief did not provide a basis to change the ALJ's decision, and denied Plaintiff's request for review. (R. 1-5). Therefore, the ALJ's decision became the final decision of the Commissioner; (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006); and Plaintiff now seeks judicial review. (Doc. 1).

## II.   Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir.

2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).

When deciding if substantial evidence supports the ALJ's decision, the mere fact that there is evidence in the record which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and noting that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). Moreover, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is disabled only if she can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve

months.  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084.  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. § 416.920 (2011);[3] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

---

[3]Because the Commissioner's decision was issued on June 6, 2011, all citations to the Code of Federal Regulations in this opinion refer to the 2011 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2011, unless otherwise indicated.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in finding that there is work in the economy that Plaintiff is able to perform, because she failed to include in her hypothetical question to the vocational expert the requirement that Plaintiff be able to alternate positions between sitting and standing at will. She claims it was error to find that Plaintiff's headaches are a severe impairment at step two of the evaluation process but thereafter to fail either to include limitations in her RFC assessment or to explain why such limitations are not required. Finally, she claims the ALJ erred in weighing the opinion of Plaintiff's treating nurse-practitioner. The Commissioner argues that the ALJ properly evaluated the opinion of Plaintiff's treating nurse-practitioner. She argues that the ALJ properly assessed RFC because although she found that Plaintiff's headaches are a severe impairment, she implicitly found that Plaintiff's testimony regarding the disabling effect of her headaches

6

is not credible, and explicitly "noted that no treatment provider recommended any limitations relating to Plaintiff's headaches" (Comm'r Br. 25), and therefore did not need to assess limitations relating to the headaches. Finally, she argues that in the circumstances of this case, there is no need for the ALJ to include the need to alternate positions "at will" in his hypothetical question to the vocational expert. The court finds that the ALJ erred in her consideration of Plaintiff's headaches, and that remand is necessary for the ALJ either to explain what RFC limitations result from this admittedly severe impairment or to explain why such a severe impairment does not produce RFC limitations in the facts of this case. Because the court finds remand is necessary for consideration of Plaintiff's headaches, it need not consider whether the ALJ erred in evaluating the nurse-practitioner's opinion or in the hypothetical question presented to the vocational expert. Plaintiff may make her arguments in that regard to the ALJ on remand.

### III. Consideration of Plaintiff's Headaches

Plaintiff points out that the ALJ found her headaches are a "severe" impairment at step two. She notes that an impairment "is 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities." (Pl. Br. 12) (citing Soc. Sec. Ruling (SSR) 96-3p). She then argues that the ALJ's RFC assessment does not include any limitations in work activities related to Plaintiff's headaches. Id. Plaintiff claims that if, as here, the ALJ finds an impairment severe at step two, but later determines that the impairment is insignificant, she is required to provide an explanation in the decision. Id. (citing Walker v. Astrue, No. CIV-10-001-SPS, 2011 WL 1135109

7

(E. D. Okla. March 25, 2011). Plaintiff points to her testimony that she experiences two to three headaches a week that keep her from working and argues that the ALJ found her allegations of symptoms resulting from her impairments "partially credible." Id. She then argues that the ALJ explained the portions of Plaintiff's testimony which were not credible but did not explain "whether Lindberg's testimony regarding her headaches was credible," and completely ignored that issue. Id. at 12-13.

The Commissioner argues that the ALJ properly assessed Plaintiff's RFC. She asserts that "the ALJ's RFC assessment properly included limitations based on those symptoms the ALJ found credible," and points out that Plaintiff "does not dispute the ALJ's finding that not all of her allegations were credible." (Comm'r Br. 23-24). She then argues that the only evidence Plaintiff points to in support of her assertion that headaches will cause her to miss one to two days of work a week is her testimony at the administrative hearing which the ALJ found was not entirely credible. Id. at 24. The Commissioner asserts that no medical evidence supports Plaintiff's allegation that headaches would cause her to miss work, and that "the ALJ properly noted that no treatment provider recommended any limitations relating to Plaintiff's headaches." (Comm'r Br. 25) (citing R. 18). Therefore, she argues that the decision should be affirmed. Id. at 26.

**A.**   **The RFC Assessment and the ALJ's Consideration of Headaches**

The ALJ found that Plaintiff has severe impairments including cervical spondylosis with degenerative disc disease, headaches, depression, anxiety disorder, and

rotator cuff tendinitis. (R. 13). She also found that Plaintiff has the RFC for a range of light work restricted by a need to perform only simple, routine, repetitive tasks in a non-captive position where she can alternate sitting and standing at will; an inability to crawl, to reach overhead with her right arm, or to climb ladders, ropes, and scaffolds; the ability to balance frequently, but only occasionally to stoop, kneel, and crouch, or to climb ramps and stairs. Id. at 15. Finally, she determined that Plaintiff must avoid concentrated exposure to excessive noise and vibration. Id.

The ALJ summarized Plaintiff's treatment with Dr. Huang for her headaches. (R. 16). She noted that Plaintiff's headaches reportedly persisted despite treatment, and that Dr. Huang "offered no more than conservative care." Id. The ALJ noted her conclusion that Plaintiff's "symptoms are not credible to the extent they are inconsistent with the medical evidence of record and the above residual functional capacity assessment." Id. at 18. She then began to explain the credibility finding:

> The claimant testified that she has incapacitating headaches that she wakes up with daily, as well as neck pain/popping, arm pain and hand/arm numbness. She reported difficulty sleeping, tossing and turning most nights, resulting in poor sleep and daytime grogginess. She testified that her depression causes her to ruminate on her problems, especially at night. She also alleged difficulty concentrating and excessive sleep when she is depressed. The claimant testified that her medications help her pain, but make her tired and cause stomach queasiness. These allegations have been considered, but do not establish disabling symptoms.

(R. 18).

In the six paragraphs immediately following that general statement, the ALJ provided specific explanations for discounting certain of Plaintiff's allegations. She

9

noted that Plaintiff's daily activities do not indicate disabling physical limitations. Id. She noted that Plaintiff's motivation to make it to a NA meeting every day is inconsistent with her therapist's opinion that she has "psychiatric lack of motivation." Id. She explained the basis for finding that Plaintiff has not shown that she cannot afford adequate medical care. Id. at 18-19. She pointed out that Plaintiff's cervical pain decreased and her range of motion improved with physical therapy. Id. at 19. She noted Plaintiff's poor work history suggested poor motivation to work which was unrelated to her medical condition. Id. Finally, she noted that the record generally supports Plaintiff's allegation that she has not abused drugs since September 2007, but that "the consultative examination inconsistently stated that the claimant has been clean for four years." Id.

### B. Analysis

The essence of the Commissioner's argument is that because the ALJ found Plaintiff's allegations of symptoms not credible, and because no treatment provider recommended work limitations in order to accommodate those headaches, it was proper for the ALJ to conclude that the limitations alleged by Plaintiff are not credible and that there are no limitations resulting from Plaintiff's headaches. The Commissioner's argument ignores the fact that the ALJ specifically found that Plaintiff's headaches are a "severe" impairment--that they "significantly limit[] [Plaintiff's] physical or mental ability to do basic work activities." (R. 13); see also 20 C.F.R. 416.920(c) (defining a "severe" impairment). If Plaintiff's headaches significantly limit her ability to do basic work activities, one would expect to see those limitations reflected in the RFC

assessment. As the court in Walker explained, "An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation." 2011 WL 1135109, at *3 (citing Timmons v. Barnhart, 118. F. App'x 349, 353 (10th Cir. 2004)).

Moreover, this is not a case in which the ALJ found a combination of severe impairments, and in which any one impairment might not be so severe as to produce limitations on basic work activities. Here, the ALJ stated that Plaintiff "has the following severe impairments," and "headaches" was in the list that followed. (R. 13). Further, in her step two analysis, the ALJ specifically discussed hepatitis C, carpal tunnel syndrome, and methamphetamine abuse, impairments which were not on her list of "severe" impairments, and she made specific findings that each one was not a severe impairment. (R. 13-14). It is beyond cavil that the ALJ found Plaintiff's headaches, individually, to be a "severe" impairment. Therefore, one would expect to see either RFC limitations attributable to the headaches, or an explanation why the headaches did not require limitations in the circumstances of this case. The ALJ provided neither.

As quoted above, the ALJ acknowledged Plaintiff's testimony "that she has incapacitating headaches that she wakes up with daily" and stated that Plaintiff's "allegations have been considered, but do not establish disabling symptoms." (R. 18). From this assertion, it is clear that the ALJ did not believe that the limitations produced by Plaintiff's headaches are <u>disabling</u>. However it is equally clear from her step two finding that she believed Plaintiff's headaches produce significant <u>limitations</u> in her

11

"ability to do basic work activities." Yet, she did not state in her RFC assessment what those limitations are. The significance of this omission is that because the limitations were not stated in the RFC assessment, they were not presented in a hypothetical question to the vocational expert. Therefore, the record contains no evidence, beyond the ALJ's lay opinion, that the representative jobs can actually be performed by an individual with the (unidentified) limitations in work abilities resulting from Plaintiff's headaches.

      The Commissioner argues that no limitations are necessary to accommodate Plaintiff's headaches because, as the ALJ noted in her decision, no treatment provider recommended limitations due to headaches. (Comm'r Br. 25) (citing R. 18). The portion of the decision to which the Commissioner cites is the ALJ's explanation of her determination to accord "some weight" to the opinions of the state agency medical consultants. (R. 18) (citing Exs. 13F, 22F (R. 635-42, 709). She then noted that additional limitations were supported by Dr. Huang's "instruction that [Plaintiff] perform no overhead work." Id. (citing Ex. 17F (R. 662-71)). She concluded, "There are no contradicting opinions from any medical source that would add further limitations upon the claimant's ability to work." Id. As the ALJ found, and the Commissioner argues, there are no medical opinions in the record which would add further limitations due to Plaintiff's headaches. However, the state agency opinions to which the ALJ cites do not acknowledge that Plaintiff's headaches are severe impairments. They recognize only three medically determinable impairments--cervical spondylosis with degenerative disc disease, hepatitis C, and carpal tunnel syndrome--and they find that the hepatitis C and

the carpal tunnel syndrome are not severe. (R. 642). Therefore, despite her finding that there are no <u>medical opinions</u> suggesting Plaintiff has limitations due to headaches, the ALJ found <u>record evidence</u> confirming Plaintiff has significant limitations in her ability to perform basic work activities due to headaches, and found that her headaches are a severe impairment. Therefore, the RFC assessment must contain limitations attributable to Plaintiff's headaches, or the ALJ must explain why such limitations are not necessary in the circumstances of this case.

The Commissioner argues that the <u>Walker</u> decision is not precedent binding on this court, and that in any case the limitations which the ALJ failed to discuss in <u>Walker</u> were recommended by a treating physician while the alleged limitations in this case were not. (Comm'r Br. 25). Although <u>Walker</u>, as the opinion of a court from the Eastern District of Oklahoma is not binding precedent here, the court finds it persuasive in the facts of this case. Moreover, the <u>Walker</u> opinion cited the <u>Timmons</u> opinion in support of its holding. <u>Timmons</u> is an unpublished decision of the Tenth Circuit and, as such, is also not controlling on this court. However, the facts and holding of <u>Timmons</u> are remarkably similar to this case. Mr. Timmons had lost his left eye, and the ALJ in that case found that the loss of his eye was a "severe" impairment. <u>Timmons</u>, 118 F. App'x at 353. However, the ALJ later found that the loss of Timmons's left eye "would pose only an 'insignificant' effect on his ability to do the full range of sedentary work." <u>Id.</u> The court found, "At the very least, the ALJ should have explained how a 'severe' impairment at step two became 'insignificant' at step five." <u>Id.</u> The same rationale applies here.

13

While the Commissioner's argument (that the limitations in Walker were recommended by a treating physician) does distinguish the facts in Walker from this case, that is a distinction without a difference. As discussed above, the ALJ in this case found that headaches were a severe impairment despite the lack of a physician's recommendation of specific limitations. As the court found in Timmons, the ALJ's apparent later determination that there are no additional limitations attributable to headaches demands, at the very least, an explanation. Remand is necessary for the Commissioner to provide that explanation.

**IT IS THEREFORE ORDERED** that the decision below shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Dated this 1st day of July 2013, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**